IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 22, 2013 at Knoxville

## JIOVANI CASTILLO GALEANA v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2010-D-3295      Cheryl A. Blackburn, Judge**

**No. M2012-01571-CCA-R3-PC   Filed 06/13/2013**

The petitioner, Jiovani Castillo Galeana, petitioned the Davidson County Criminal Court for post-conviction relief from his 2011 guilty-pleaded conviction of possession with intent to sell 300 grams or more of cocaine. The conviction resulted in a Range I sentence of 18 years to serve in the Department of Correction. Following an evidentiary hearing, the post-conviction court denied relief, and following our review, we affirm the order of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Leah R. Wilson, Nashville, Tennessee, for the appellant, Jiovani Castillo Galeana.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Robert T. Homlar, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The transcript of the petitioner's guilty plea hearing included a statement of the basis for the guilty plea and conviction:

> On August 16th, 2010, a confidential informant called a phone number and ordered one kilogram of cocaine from the [petitioner]. The Defendant Sandoval interpreted for [the petitioner] who could not speak English. The confidential informant was instructed to go to the parking lot at 462 Flintlock

Court here in Davidson County.  He was told the cocaine would be delivered in a silver dodge.  The Dodge arrived driven by [the petitioner] and Defendant Sandoval in the passenger's seat.  Two children were in the back of the car.  The confidential informant parked next to the defendants' vehicle and discussed the cocaine and verified over a wire that the cocaine was in the car.  And the takedown officers recovered a one kilogram green brick powder cocaine.  It field test[ed] positive.  They also recovered a cell phone number – the phone was the cell phone that the CI had called.  All these events occurred in Davidson County.

In the evidentiary hearing, the Spanish-speaking petitioner testified through an interpreter that, during his guilty plea submission hearing, he did not understand his interpreter well. He testified that he thought the sentence of 18 years was the State's first offer and did not know it was the actual sentence.  He thought, "[T]hat's a long time for me." He affirmed to his post-conviction counsel that he did not understand that he was pleading guilty.

The petitioner testified that his trial attorney did not speak Spanish and that he could not understand counsel even though an interpreter was used. The petitioner said that on one of his lawyer's visits to the jail to confer with him, counsel did not bring an interpreter.  The petitioner testified that counsel provided no discovery materials to him.

The petitioner testified that he signed the plea papers "for my love to that other person and to my children."[1]  He said that the plea papers were written in English and that he could neither read them nor understand the interpreter's recitation.  He affirmed that, had he understood what was happening, he would not have entered into an agreement that included an 18-year prison sentence.

On cross-examination, the petitioner reiterated that he thought the 18-year sentence was merely a plea offer.  He testified, "That's what I understood from the person that was translating.  I thought that there would be another day in court."  He admitted that he received discovery materials from the "other person that [he] was detained with, Louisa." He testified that he thought the plea submission hearing was a proceeding to "sav[e] that other person so she would not be in jail."

_____

[1]The petitioner explained on cross-examination that he pleaded guilty because he did not want his children's mother "to spend time in jail because of my kids."

The petitioner's trial counsel, a lawyer with more than 22 years' experience, testified that he had been retained by the petitioner's family to represent him in the general sessions court and the trial court. Counsel testified that he obtained "a complete rundown on the case" from the detective, whom he had known for 20 years. Counsel detailed the proceedings of the case in the general sessions court and stated that most of his interactions with the petitioner were aided by the use of an interpreter even though counsel spoke "some Spanish."

Counsel testified in detail about the specific dates on which he appeared in the trial court on the case and on which he conferred with the petitioner. Counsel recalled, "[E]ach time [the petitioner] had many questions and, again, we answered all of them and, again, I would apologize to the translator because I knew they were going to other courtrooms."

Counsel testified that he received discovery materials from the State pursuant to his request and that the charged offenses involved the use of a confidential informant.

Counsel testified that Louisa Sandoval was the petitioner's wife, that the State considered her guilty of the drug offenses because she served as interpreter during the drug deal, and that she was at large at the time of the several settlement conferences although she had visited counsel in his office several times. He testified that the petitioner wanted counsel to try to help Ms. Sandoval even though he did not represent her. The petitioner did not want his wife to go to jail.

Counsel stated that the State rejected his offer of 15 years but ultimately agreed to an 18-year sentence and to recommend Ms. Sandoval's placement on community corrections when she came into custody. Counsel's notes reflected that this offer was discussed with the petitioner at the settlement conference on March 10, 2011, and that the petitioner "wants to do this." The case was continued until March 24, 2011. Ms. Sandoval had surrendered on March 22. She was appointed an attorney and appeared in court on March 24. Her attorney succeeded in arranging an agreement that included, rather than 12 years on community corrections, 10 years on probation.

Counsel testified that all of his meetings with the petitioner involved the use of an interpreter except for one visit to the jail and that during that visit, he and the petitioner were "still able to converse."[2] On March 24, 2011, counsel had the interpreter read the entirety of the plea documents to the petitioner. He added, "And I tell my clients if they have

[2]On cross-examination, counsel testified that the interpreter-less jail visit occurred because he had gone to the jail to see other clients and visited the petitioner while he was there.

any question at any time, to stop at that point. And one of the things I always say is, this is it today, no more court, no appeals."

Counsel explained that the petitioner was originally charged with two counts, one being a conspiracy count that was dismissed as a result of the approval of the plea agreement. Counsel opined that the petitioner was fortunate not to have been charged with drug dealing in a school zone. Based upon counsel's thorough knowledge of the neighborhood in which the offense was committed, he believed that the location may well have been within the drug-free zone for Una Elementary School.

Counsel testified that he had no doubts about the petitioner's comprehension of the plea arrangement. The petitioner "knew what he was doing," counsel said. "He was happy that he was able to spare his wife jail time."

On cross-examination, counsel testified that the offense was a "buy bust" and that the State believed that Ms. Sandoval interpreted between the informant and the petitioner.

Counsel reiterated that the petitioner "knew exactly what he was doing." Counsel had recorded the computations he made to show the petitioner when his first opportunity for parole would arise. He said that he informed the petitioner that his opportunity for parole on the 18-year sentence would be six to nine months after such an opportunity would arise for a sentence of 15 years – the minimum sentence for the Class A felony.

In response to the court's questioning, counsel testified that he had never experienced any problems with his Hispanic clients' understanding the interpreter who served during the plea negotiations and plea submission. The petitioner never indicated that he did not understand the interpreter. Counsel testified that he has spoken Spanish fluently enough to "[get] around Mexico for 28 years."

The guilty plea hearing transcript was exhibited to the evidentiary hearing. It evinces that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the defendant. In the colloquy, the trial judge informed the petitioner of the 18-year sentence to be served in the department of correction, and the petitioner indicated that he understood the terms of his agreement. The court asked the petitioner whether he had "any difficulty understanding what [he's] doing," and the petitioner replied, "No." The trial court then examined Ms. Sandoval concerning the terms of her charges and her guilty plea. The petitioner responded, "Yes," to the trial court's query whether the statement of the factual basis was "generally true."

In the post-conviction court's extensive and thorough order denying post-conviction relief, the court affirmatively accredited trial counsel's testimony. It further stated that "the transcript of the guilty plea hearing belies Petitioner's claims." The court said that the transcript showed that the petitioner understood the proceedings, the nature of the charges, the terms of the plea agreement, and the effects of pleading guilty. The court concluded that the petitioner's guilty plea was "made with an awareness of the consequences, and, as such, the guilty plea was voluntarily and knowingly entered."

Following the entry of this order, the petitioner effected a timely appeal.

Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn.2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v.. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Strickland*, 466 U.S. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant

the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because 'the due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

Both claims of ineffective assistance of counsel and involuntary guilty plea are mixed questions of law and fact. *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn.2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In the present case, the record fully supports the post-conviction court's findings and holdings. The record of the guilty-plea submission hearing and the accredited testimony of the petitioner's trial counsel evince the petitioner's understanding of the proceedings and his willingness to enter into the plea.

The record also fully demonstrates that trial counsel rendered effective assistance in representing the petitioner. Indeed, rarely in a post-conviction record has this court seen a more comprehensive and detailed account of a trial attorney's conduct during his representation of a client. Counsel was apparently able to render specific and cogent testimony because he took copious notes of his actions and the petitioner's responses during the pendency of the case in both the general sessions court and the criminal court. Such testimony was indeed worthy of being accredited

Accordingly, the order of the criminal court is affirmed.

_____

JAMES CURWOOD WITT, JR., JUDGE